UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARY ANN FOTI and ANNA FRANCESCA FOTI, individually and on behalf of all others similarly situated, | ) ) ) | Case No. 1:20-cv-11581-WGY |
| | ) | **ORAL ARGUMENT REQUESTED** |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| SUFFOLK UNIVERSITY, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF
<u>MOTION TO DISMISS THE FIRST AMENDED COMPLAINT</u>**

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

PRELIMINARY STATEMENT ...................................................................................1

STATEMENT OF FACTS ..........................................................................................3

LEGAL STANDARD....................................................................................................5

ARGUMENT ................................................................................................................6

I.    PLAINTIFFS CANNOT STATE A COGNIZABLE CLAIM CHALLENGING
      THE QUALITY OF ANNA FOTI'S EDUCATION.............................................6

      A.    Plaintiffs Impermissibly Allege Educational Malpractice ........................6

      B.    Plaintiffs Seek An Impermissible Intrusion Into Academic Freedom ....................9

II.   PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT ...............11

      A.    Plaintiffs Fail To Allege Any Express Contract ....................................11

      B.    Plaintiffs Fail To Allege Any Definite Or Certain Promises ................................14

      C.    The Documents Plaintiffs Cite Authorize Suffolk to Change Its
            Educational Programs as Necessary ....................................................17

III.  PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT .................18

CONCLUSION............................................................................................................20

i

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Air Sunshine, Inc. v. Carl*,
663 F.3d 27 (1st Cir. 2011) ........................................................................................... 5

*Ambrose v. New England Ass'n of Schs. and Colls., Inc.*,
252 F.3d 488 (1st Cir. 2001) ............................................................................. 6, 7, 8, 9

*Arivella v. Lucent Techs., Inc.*,
623 F. Supp. 2d 164 (D. Mass. 2009) ........................................................................... 5

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...................................................................................................... 5

*Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*,
490 F.3d 1 (1st Cir. 2007) ........................................................................................... 11

*Bahrani v. Northeastern Univ.*,
Case No. 1:20-cv-10946, Dkt. 39 (D. Mass Nov. 6, 2020) ...................................... 15

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ...................................................................................................... 5

*Bergeron v. New Hampshire*,
Civil No. 18-cv-525-PB, 2018 WL 6834607 (D.N.H. Dec. 3, 2018) .......................... 8

*Berkowitz v. President & Fellows of Harvard Coll.*,
58 Mass. App. Ct. 262 (2003) ...................................................................................... 7

*Blake v. Smith*,
No. 0300003B, 2006 WL 4114305 (Mass. Super. Ct. Dec. 11, 2006) ...................... 20

*Bleiler v. Coll. of Holy Cross*,
No. 11-cv-11541-DJC, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) .................. 9, 20

*Brooks v. AIG SunAmerica Life Assur. Co.*,
480 F.3d 579 (1st Cir. 2007) ...................................................................................... 12

*Buck v. Am. Airlines, Inc.*,
476 F.3d 29 (1st Cir. 2007) ........................................................................................ 12

*Bulwer v. Mount Auburn Hosp.*,
473 Mass. 672 (2016) .................................................................................................. 11

*Cavaliere v. Duff's Bus. Inst.*,
605 A.2d 397 (Pa. Super. Ct. 1992) ............................................................................. 8

*Chong v. Northeastern Univ.*,
– F. Supp. 3d –, Case No. 20-cv-10844-RGS,
2020 WL 5847626 (D. Mass. Oct. 1, 2020) ....................................................... 2, 12, 17, 19

ii

*Clorox Co. Puerto Rico v. Proctor & Gamble Commercial Co.*,
   228 F.3d 24 (1st Cir. 2000) ................................................................................. 4, 5

*Cuesnongle v. Ramos*,
   713 F.2d 881 (1st Cir. 1983) ............................................................................ 10, 17

*Doe v. Town of Framingham*,
   965 F. Supp. 226 (D. Mass. 1997) ........................................................................ 6

*G v. Fay Sch., Inc. by & through its Bd. of Trustees*,
   282 F. Supp. 3d 381 (D. Mass. 2017) ............................................................... 14, 15

*Global Investors Agent Corp. v. Nat'l Fire Ins. Co.*,
   76 Mass. App. Ct. 812 (2010) ............................................................................. 19

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) .......................................................................................... 2, 10

*Guckenberger v. Boston Univ.*,
   974 F. Supp. 106 (D. Mass. 1997) .................................................... 10, 13, 14, 16

*Hamilton v. Partners Healthcare Sys., Inc.*,
   209 F. Supp. 3d 379 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) .............. 5

*In Re: Boston Univ. Covid-19 Refund Litig.*,
   Case No. 1:20-cv-10827-RGS, Dkt. 48 (D. Mass. Nov. 4, 2020) ......................... 16

*Krebs v. Charlotte Sch. of Law, LLC*,
   No. 3:17-CV-00190-GCM, 2017 WL 3880667 (W.D.N.C. Sept. 5, 2017)............... 9

*Lovelace v. Se. Massachusetts Univ.*,
   793 F.2d 419 (1st Cir. 1986) ................................................................................ 11

*McLaughlin v. City of Lowell*,
   No. CIV.A. 94–5069, 1998 WL 224929 (Mass. Super Ct. Apr. 3, 1998) ................ 6

*Metro. Life Ins. Co. v. Cotter*,
   464 Mass. 623 (2013) .......................................................................................... 19

*Morris v. Brandeis Univ.*,
   60 Mass. App. Ct. 1119, 2004 WL 369106 (2004) ...................................... 7, 14, 16

*New York Times v. Sullivan*,
   376 U.S. 254 (1964) ............................................................................................ 10

*Pershouse v. L.L. Bean, Inc.*,
   368 F. Supp. 3d 185 (D. Mass. 2019) .................................................................. 19

*Regents of Univ. of Calif. v. Bakke*,
   438 U.S. 265 (1978) ............................................................................................ 10

*Rinsky v. Trs. of Boston Univ.*,
   No. 10cv10779–NG, 2010 WL 5437289 (D. Mass. Dec. 27, 2010) .................. 13, 14

*Roe v. Loyola Univ. New Orleans*,
    No. 07–1828, 2007 WL 4219174 (E.D. La. Nov. 26, 2007) .................................................... 9

*Ross v. Creighton*,
    957 F.2d 410 (7th Cir. 1992) ........................................................................................................ 8

*Salamon v. Terra*,
    394 Mass. 857 (1985) ................................................................................................................. 20

*Schaer v. Brandeis Univ.*,
    432 Mass. 474 (2000) ............................................................................................................ 7, 17

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017) ......................................................................................................... 18

*Shin v. Massachusetts Inst. of Tech.*,
    No. 020403, 2005 WL 1869101(Mass. Super. Ct. June 27, 2005) ........................................... 16

*Singarella v. Boston*,
    42 Mass. 385 (1961) ................................................................................................................... 12

*Soto-Torres v. Fraticelli*,
    654 F.3d 153 (1st Cir. 2011) ....................................................................................................... 5

*Squeri v. Mount Ida Coll.*,
    954 F.3d 56 (1st Cir. 2020) ................................................................................................. 11, 12

*Sweezy v. New Hampshire*,
    354 U.S. 234 (1957) ............................................................................................................ 10, 17

*Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*,
    534 F. Supp. 340 (D. Mass. 1982) ............................................................................................ 19

*Tel. Answering Serv. of Bos., Inc. v. New Eng. Tel. & Tel. Co.*,
    358 Mass. 822 (1971) ................................................................................................................. 12

*Thornton v. Harvard Univ.*,
    2 F. Supp. 2d 89 (D. Mass. 1998) ............................................................................................. 19

## Other Authorities

66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1962) ....................................................... 19

George L. Blum, Annotation,
    *Tort Liability of Public Schools and Institutions of Higher Learning for Educational
    Malpractice*, 11 A.L.R. 7th Art. 5 (2016) .................................................................................. 6

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, defendant Suffolk University respectfully submits this memorandum in support of its Motion to Dismiss.

## PRELIMINARY STATEMENT

Throughout the global COVID-19 public health crisis, Suffolk University has pursued its educational mission while protecting the health and safety of the Suffolk community. In March 2020, following federal and state orders declaring public health emergencies, Suffolk exercised its academic discretion to continue delivering its curriculum to its students by transitioning to remote education. This swift response to a global pandemic that has infected millions of Americans protected the health and safety of students, faculty, and staff while enabling students to maintain uninterrupted progress toward their degrees. In addition to continuing its educational mission, Suffolk also maintained the vast majority of its student services, such as career counseling, health services, and some student events, and has distributed CARES Act funding to qualifying students that requested emergency financial support.

Plaintiffs Mary Ann Foti and her daughter, Anna Francesca Foti, a junior in the Spring 2020 semester, allege Suffolk's timely and decisive response to COVID-19 constitutes a breach of contract and unjust enrichment. Plaintiffs do not deny Suffolk acted properly to protect its students, faculty and staff. To the contrary, they recognize Suffolk's transition to remote learning resulted from COVID-19 and the University determined it "did not have a choice in cancelling in-person classes[.]" Am. Compl. ¶ 8. Similarly, they do not allege Suffolk prevented Anna Foti from continuing her academic program. Rather, their allegations make clear Anna Foti continued to take the same classes, taught by the same professors, with the same classmates. Plaintiffs also do not contend Suffolk failed to provide Anna Foti with the same number of course credits toward graduation as she would have obtained before the pandemic. The Amended Complaint, and

plaintiffs' underlying theory of the case, thus amount to a claim that remote learning is less effective and less valuable than in-person instruction.

But those claims are barred under well-settled Massachusetts law that prohibits adjudication of the quality and value of the education and services provided by universities. Plaintiffs' claims would require the Court to evaluate the differences between, and qualitative merits of, remote and in-person learning. But those matters rest squarely within any university's academic judgment and discretion, as matters of educational autonomy embodied not only in Massachusetts common law but also a university's constitutionally protected academic freedom "to make its own judgments as to education." *Grutter v. Bollinger*, 539 U.S. 306, 329 (2003) (internal citations and quotation marks omitted). This Court should hold that both counts of the Amended Complaint fail to state a claim because they attempt to challenge how Suffolk's curriculum should be taught and how much their programs are worth, allegations that amount to impermissible claims of "educational malpractice."

Independent of these educational-malpractice and academic-freedom bars, the Amended Complaint also fails to allege necessary elements of each of plaintiffs' claims. For just such reasons, Judge Stearns recently dismissed similar contract and unjust enrichment claims against Northeastern University. *See Chong v. Northeastern University*, – F. Supp. 3d –, Case No. 20-cv-10844-RGS, 2020 WL 5847626 (D. Mass. Oct. 1, 2020). Plaintiffs here, as in *Chong*, fail to identify any contractual agreement that requires Suffolk to deliver education or student services in a particular manner or in an in-person rather than remote format under all circumstances, let alone a "definite and certain" promise to provide in-person instruction during a global pandemic. And here, as in *Chong*, plaintiffs' unjust enrichment claim should be dismissed because they plead that Suffolk purportedly breached a contract by retaining tuition and fees, showing the availability of

an adequate alternative remedy at law.  Nor can there be any unjust enrichment where tuition and fees were concededly used (as here) for their intended educational purposes.

For all these reasons, this Court should grant Suffolk's motion to dismiss.

## STATEMENT OF FACTS

Consistent with federal and Massachusetts declarations of emergency in March 2020, Suffolk took decisive action to protect its students, faculty and staff by transitioning from in-person education to remote learning.  *See* Am. Compl. ¶ 36.  Plaintiffs acknowledge Suffolk transitioned to remote learning as a result of COVID-19, *id*. ¶ 1, and concede the University determined it "did not have a choice in cancelling in-person classes," *id*. ¶ 8.  They nonetheless bring this lawsuit on behalf of a putative class of all people who paid tuition or fees for Suffolk's Spring 2020 semester. *Id*. ¶ 54.  They assert claims for breach of contract and unjust enrichment, seeking refunds of tuition and fees.

Notably, plaintiffs do not allege that the shift to remote learning prevented Anna Foti or other students from completing their academic coursework, deprived them of academic credit toward their degrees, or disrupted specific student services.  Instead, plaintiffs claim remote instruction is "subpar in practically every aspect," and deprived Anna Foti of "collaborative learning and in-person dialogue, feedback, and critique," such that it is "in no way the equivalent of in-person education. . . ."  *Id*. ¶ 6.  Plaintiffs allege "[n]umerous studies support the existence of significant differences between online and in-person education, differences that clearly favor in-person instruction and cast doubt on the value of online learning."  *Id*. ¶ 41; *see also id*. ¶¶ 42-44.  Based on these differences, plaintiffs claim the remote instruction received "was not even remotely worth the amount charged . . . for Spring Semester 2020 tuition."  *Id*. ¶ 39.

In addition to in-person instruction, plaintiffs allege they paid mandatory fees such as "activity fees and technology fees." *Id*. ¶ 47.  Plaintiffs claim these fees "provide[d] support" for services like student organizations, performing arts, on-campus printing services and internet. *Id*. ¶¶ 48-49.  They contend that, as a result of the transition to remote learning, they paid these fees for "buildings they could no longer enter and activities that were not available." *Id*. ¶ 50.

Plaintiffs do not allege any contractual promises supporting their requested relief.  They summarily assert that the terms of their agreement with Suffolk are found in "various written materials, including, without limitation, course descriptions, academic catalogs, student handbooks, account statements, emails , representations and statements made by Suffolk through various media, including its website and other materials." *Id*. ¶ 26.  However, the only specific statements plaintiffs cite appear on Suffolk's website, and highlight the University's focus on "open, independent thinking and [ ] appreciation of diverse cultures, perspectives, and people" and its location in "Boston's thriving urban landscape." *Id*. ¶ 33.  Plaintiffs also note that Suffolk offered separate online learning programs, concluding that this "is evidence of a contractual agreement" to provide in-person instruction for traditional programs. *Id*. ¶ 30; *see* ¶¶ 31-32.

Although plaintiffs contend the academic catalog contains terms of their alleged contract with the University, *id*. ¶ 72, they do not identify a single specific statement or term.  In fact, the catalog clearly reserves the right for Suffolk to "change, discontinue, or add academic requirements, courses or programs of study at any time." Ex. 1 (2019-2020 academic catalog home).[1]  Accordingly, one of the very documents on which plaintiffs rely allows Suffolk to modify the format in which it delivers its academic programs, as it did in response to COVID-19.

_____

[1]  Because plaintiffs contend the catalog is an integral part of the alleged contract, Am. Compl. ¶¶ 25-27, 65, it may be considered on a motion to dismiss. *Clorox Co. Puerto Rico v. Proctor &*

Additionally, although plaintiffs allege they "accept[ed] Defendant's offer" to provide services "in exchange of the payment of the fees," Am. Compl. ¶ 70, they do not allege a single statement by the University regarding the technology fee, student fee, or any other mandatory fees.

## LEGAL STANDARD

"To survive a motion to dismiss, a plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Arivella v. Lucent Techs., Inc.*, 623 F. Supp. 2d 164, 172 (D. Mass. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court evaluating a motion to dismiss need not accept as true "statements in the complaint that merely offer legal conclusions couched as facts or are threadbare or conclusory." *Air Sunshine, Inc. v. Carl*, 663 F.3d 27, 33 (1st Cir. 2011) (quoting *Soto-Torres v. Fraticelli*, 654 F.3d 153, 158 (1st Cir. 2011)). "If the recited facts 'do not permit the court to infer more than the mere possibility of misconduct,' the complainant has failed to show entitlement to relief." *Hamilton v. Partners Healthcare Sys., Inc.*, 209 F. Supp. 3d 379, 387 (D. Mass. 2016), *aff'd*, 879 F.3d 407 (1st Cir. 2018) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). In addition to the allegations in a complaint, "it is well-established that in reviewing the complaint, [courts] 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint . . . .'" *Clorox*, 228 F.3d at 32.

---

*Gamble Commercial Co.*, 228 F.3d 24, 32 (1st Cir. 2000). Suffolk has attached relevant excerpts of the catalog to this motion. The catalog is also available on Suffolk's website. https://www.suffolk.edu/academics/academic-catalogs/undergraduate-course-catalog-archive-2019-2020.

## ARGUMENT

I. **PLAINTIFFS CANNOT STATE A COGNIZABLE CLAIM CHALLENGING THE QUALITY OF ANNA FOTI'S EDUCATION**

### A.   Plaintiffs Impermissibly Allege Educational Malpractice

Plaintiffs' causes of action are barred at the outset because an "educational malpractice" claim "is not recognized under Massachusetts law." *Doe v. Town of Framingham*, 965 F. Supp. 226, 230 (D. Mass. 1997). As a result, "if the [plaintiff] alleges negligence in the evaluation, placement, or delivery of educational services . . . [the defendant] would be exempt from liability." *McLaughlin v. City of Lowell*, No. CIV.A. 94–5069, 1998 WL 224929, at *5 (Mass. Super Ct. Apr. 3, 1998); *see also* George L. Blum, Annotation, *Tort Liability of Public Schools and Institutions of Higher Learning for Educational Malpractice*, 11 A.L.R. 7th Art. 5 (2016) ("If a claim requires an analysis of the quality of education received and, in making that analysis, the fact finder must consider principles of duty, standards of care, and the reasonableness of the defendant's conduct, then the claim is one of educational malpractice."). "Courts consistently have rejected students' claims of educational malpractice against schools" in light of "the lack of a satisfactory standard of care by which to evaluate educators' professional judgments and the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions." *Ambrose v. New England Ass'n of Schs. and Colls., Inc.*, 252 F.3d 488, 499 (1st Cir. 2001) (applying Maine law and collecting cases). Both causes of action require dismissal under this well-settled precedent.

*First*, plaintiffs' breach of contract claims concede that "all classes" were converted to remote instruction, and thus that students continued to receive instruction in the same courses they would have absent the transition to remote learning. *See* Am. Compl. ¶ 21 ("[A]ll classes were

held remotely for the remainder of the spring 2020 semester.").  They do not claim that students were denied any academic credit.  Rather, as indicated above, plaintiffs allege only that, after the transition to remote learning, Suffolk's courses were supposedly "subpar in practically every aspect" including their lack of "collaborative learning and in-person dialogue, feedback, and critique."  *Id*. ¶ 6.  And they speculate that the remote learning offered by Suffolk in the Spring 2020 semester was comparable to online learning examined in academic studies that purportedly "favor in-person instruction."  *Id*. ¶ 41.  Thus, plaintiffs' claim is not that Suffolk failed to provide a specifically promised service; they admit that all classes were still provided remotely, and they do not claim Anna Foti was deprived of academic credit.  Instead, the Amended Complaint seeks a judicial determination that the remote instruction Suffolk provided in the Spring Semester was inferior in quality and value to the academic in-person instruction, and therefore warrants a refund.

These allegations are textbook examples of claims barred by educational malpractice precedents.  In order to adjudicate these claims and plaintiffs' theory that remote instruction was "subpar in practically every aspect," this Court would have to assess "the efficacy of the operations of academic institutions."  *Ambrose*, 252 F.3d at 499.  But that assessment would violate the "[g]reat deference extended to university decision-making on academic" matters.  *Morris v. Brandeis Univ.*, 60 Mass. App. Ct. 1119, 2004 WL 369106 (2004); *see Schaer v. Brandeis Univ.*, 432 Mass. 474, 482 (2000) (recognizing "the principle that '[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities'") (internal citations omitted); *Berkowitz v. President & Fellows of Harvard Coll.,* 58 Mass. App. Ct. 262, 269-70 (2003) ("[I]n the absence of a violation of a reasonable expectation created by the contract…or arbitrary and capricious conduct by the university [internal citations omitted] courts are not to intrude into university decision-making.").

7

It makes no difference that plaintiffs frame their claim as one for breach of contract rather than educational malpractice.  Plaintiffs may not employ "creative labeling" to ask a court to "substitute [its] judgment for that of professional educators."  *Ambrose*, 252 F.3d at 497; *see also Bergeron v. New Hampshire*, Civil No. 18-cv-525-PB, 2018 WL 6834607, at *1 (D.N.H. Dec. 3, 2018) (dismissing plaintiff's claim under New Hampshire law that school "failed to adequately prepare him to assert his constitutional rights" based on educational malpractice bar).  As the First Circuit observed in applying Maine law in *Ambrose*, the great weight of jurisdictions applying various state laws have roundly rejected educational malpractice claims challenging the quality of education under the guise of contract claims.  *See, e.g.*, *Cavaliere v. Duff's Bus. Inst.*, 605 A.2d 397, 403 (Pa. Super. Ct. 1992) ("We are persuaded by the reasoning employed by many courts that have refused to recognize a general cause of action for educational malpractice, whether framed in terms of tort or breach of contract, where the allegation is simply that the educational institution failed to provide a quality education."); *Ross v. Creighton*, 957 F.2d 410, 416 (7th Cir. 1992) (applying Illinois law and collecting cases) ("Where the essence of the complaint is that the school breached its agreement by failing to provide an effective education, the court is again asked to evaluate the course of instruction . . . [and] is similarly called upon to review the soundness of the method of teaching that has been adopted by an educational institution.").

*Second*, plaintiffs' unjust enrichment claim is barred by the same precedents because it seeks the same determination that the remote learning Suffolk provided is not worth the tuition and fees students paid.  *Compare* Am. Compl. ¶ 64 (Students "entered into binding contracts with Defendant whereby Plaintiffs . . . would pay tuition and fees in exchange for on-campus, educational services and access to on-campus facilities, events and services.") *with* ¶ 80 (Students "paid tuition and mandatory fees so that Suffolk could and would provide them with in-person

instruction and access to in-person campus facilities, events and services.").  Where courts have dismissed students' contract claims, they have also rejected unjust enrichment claims based on the same facts.  *See e.g., Bleiler v. Coll. of Holy Cross*, No. 11-cv-11541-DJC, 2013 WL 4714340 (D. Mass. Aug. 26, 2013) (applying Massachusetts law); *Krebs v. Charlotte Sch. of Law, LLC,* No. 3:17-CV-00190-GCM, 2017 WL 3880667 at *6 (W.D.N.C. Sept. 5, 2017) (applying North Carolina law); *Roe v. Loyola Univ. New Orleans*, No. 07–1828, 2007 WL 4219174, at *2 (E.D. La. Nov. 26, 2007) (applying Louisiana law).

*Third*, the same educational malpractice principles that warrant dismissal of plaintiffs' claims for tuition refunds also require dismissal of their claims related to student fees.  Although it is unclear which specific fees form the basis of plaintiffs' claims (*see infra* Section II.A) student and campus services are integrally related to the educational environment.  Determining whether Suffolk was required to provide student services would require an impermissible inquiry into the University's decision to transition to remote learning, an academic decision based on the professional judgment of educators and the Suffolk administration, and thus plainly barred by the educational malpractice jurisprudence.  *See Ambrose*, 252 F.3d at 498-99 (declining to review whether school provided "an appropriate curriculum, helped to assure graduates of opportunities in the job market, and possessed institutional integrity" because of court's hesitance to "evaluate educators' professional judgments").

## B.  Plaintiffs Seek An Impermissible Intrusion Into Academic Freedom

These long-established principles of educational malpractice embedded in Massachusetts common law are ultimately rooted in core constitutional principles that protect "[a]cademic freedom," which has "long has been viewed as a special concern of the First Amendment." *Regents of Univ. of Calif. v. Bakke*, 438 U.S. 265, 312 (1978).  The Supreme Court has long

recognized that universities occupy "a special niche in our constitutional tradition" that protects the "freedom of a university to make its own judgments as to education." *Grutter*, 539 U.S. at 329.  Universities enjoy a strong degree of "educational autonomy," *id*., and the "four essential freedoms of a university" include deciding "who may teach, what may be taught, ***how it shall be taught***, and who may be admitted to study." *Sweezy v. New Hampshire*, 354 U.S. 234, 263 (1957) (Frankfurter, J., concurring in the result) (emphasis added).  Just as the First Amendment must inform and limit the adjudication of claims under a state's common law of defamation, *see New York Times v. Sullivan*, 376 U.S. 254, 265 (1964) (imposing actual malice standard and limitations on damages to protect press freedom), so it must inform and limit any contract and unjust enrichment claims challenging (as here) the quality of the education a university provides. Accordingly, Massachusetts courts do not "rigidly" apply contract law in claims against universities "because '[t]he student-university relationship is unique . . . .'" *Guckenberger v. Boston Univ*., 974 F. Supp. 106, 150-51 (D. Mass. 1997) (applying Massachusetts law).  "Even to think that a university could be found to have broken its contract when it changed the dates of classes, or the curriculum, for reasons beyond its control, or changed teachers, should startle anyone at all familiar with university life." *Cuesnongle v. Ramos*, 713 F.2d 881, 885 (1st Cir. 1983) (applying Puerto Rico law).

A judicial determination that remote learning is a less effective and less valuable method of instruction than in-person instruction, thereby requiring refunds of tuition and fees, would thus infringe Suffolk's academic freedom "to determine what shall be taught and how it shall be taught." *Asociacion de Educacion Privada de Puerto Rico, Inc. v. Garcia-Padilla*, 490 F.3d 1, 19 (1st Cir. 2007) (holding Puerto Rico law, by requiring private schools to obtain approval from an association, council, or assembly of parents for annual textbook budgets, interfered with schools'

right to academic freedom under the First Amendment).  If matters "such as course content, homework load, and grading policy are core university concerns" protected by academic freedom, *Lovelace v. Se. Massachusetts Univ.*, 793 F.2d 419, 426 (1st Cir. 1986) (applying Massachusetts law), by necessary implication, the same is true for a university's determination that shifting to remote learning is the most effective (and safest) way to deliver its curriculum during a pandemic.

## II.       PLAINTIFFS FAIL TO STATE A CLAIM FOR BREACH OF CONTRACT

Independent of the educational-malpractice and academic-freedom bars detailed above, plaintiffs' contract claim should be dismissed for at least three additional reasons.  *First*, plaintiffs fail to allege any contractual promise mandating a specific form or manner of education.  *Second*, under Massachusetts law, plaintiffs' reliance on indefinite language on Suffolk's website cannot form the basis of a binding contract as a matter of law.  *Third*, the academic catalog on which plaintiffs rely expressly authorizes Suffolk to change its academic courses and programs, just as it did with the transition to remote learning in response to the global pandemic.

### A.       Plaintiffs Fail To Allege Any Express Contract

To prevail on a breach of contract claim under Massachusetts law, "a plaintiff must demonstrate that there was an agreement between the parties; the agreement was supported by consideration; the plaintiff was ready, willing, and able to perform his or her part of the contract; the defendant committed a breach of the contract; and the plaintiff suffered harm as a result." *Bulwer v. Mount Auburn Hosp.*, 473 Mass. 672, 690 (2016) (quoting *Singarella v. Boston*, 342 Mass. 385, 387 (1961)).  It is further "essential to state with 'substantial certainty' the facts showing the existence of the contract and the legal effect thereof."  *Squeri v. Mount Ida Coll.*, 954 F.3d 56, 71 (1st Cir. 2020) (applying Massachusetts law) (quoting *Tel. Answering Serv. of Bos., Inc. v. New Eng. Tel. & Tel. Co.*, 358 Mass. 822 (1971)); *see also Brooks v. AIG SunAmerica Life*

*Assur. Co.,* 480 F.3d 579, 586 (1st Cir. 2007) (applying Massachusetts law) ("Plaintiffs also must do more than allege, in conclusory fashion, that the defendant breached the contract, by describing, with 'substantial certainty,' the specific contractual promise the defendant failed to keep"). Accordingly, "in a contract action, this irreducible minimum requires the pleader to 'explain what obligations were imposed on each of the parties by the alleged contract.'" *Buck v. Am. Airlines, Inc.*, 476 F.3d 29, 38 (1st Cir. 2007) (applying Massachusetts law).[2]

Plaintiffs' contract claim does not identify a single contractual promise requiring Suffolk to provide exclusively in-person instruction or services under all circumstances, much less during a pandemic, in exchange for tuition and fees. These same pleading deficiencies resulted in dismissal of students' contract claim against Northeastern University seeking tuition refunds based on a transition to remote learning due to COVID-19. *Chong*, 2020 WL 5847626, at *3. That claim failed because the relevant agreement "tie[d] the payment of tuition to registration for courses, *not to the receipt of any particular method of course instruction.*" *Id.* (emphasis added).

This same foundational principle—that a student must identify a specific contractual promise by their university—supported dismissal under Massachusetts law in *Squeri v. Mount Ida College*. There, students at Mount Ida College alleged claims for breach of contract after their school became insolvent and abruptly closed, thereby depriving the students of their admission, classes, and ultimately, a degree. *Squeri*, 954 F.3d at 61-62. The students claimed that the college should have told them earlier of its financial difficulties and pending closure. But the First Circuit

---

[2] Courts nationwide applying various states' laws require contract claims against universities to set forth the specific promise the school failed to honor to survive a motion to dismiss. *See, e.g.*, *Lee v. Univ. of N.M.,* 449 F. Supp. 3d 1071 (D.N.M. Mar. 30, 2020); *Rolph v. Hobart & William Smith Colls.*, 271 F. Supp. 3d 386, 405-06 (W.D.N.Y. 2017); *David v. Neumann Univ.*, 177 F. Supp. 3d 920, 925 (E.D. Pa. 2016); *Nungesser v. Columbia Univ.*, 169 F. Supp. 3d 353, 369-70 (S.D.N.Y. 2016); *Gibson v. Walden Univ., LLC*, 66 F. Supp. 3d 1322, 1324 (D. Or. 2014).

affirmed dismissal because the students "d[id] not allege the terms of any . . . contract or that specific terms required earlier disclosure of the closing" of the college.  *Id.* at 71-72.  Although they made "passing reference to enrollment deposits and the fact that students gave up the chance to enroll at other schools by choosing Mount Ida," the plaintiffs "fail[ed] to explain how th[o]se actions formed an express or implied contract which obliged Mount Ida to provide earlier notice of its difficulties to its students than it did."  *Id.*  The Amended Complaint suffers from the very same defects.  Plaintiffs do not identify the "terms of any . . . contract or that specific terms required" Suffolk to provide in-person instruction under all circumstances, including a pandemic. *Id*; *see Rinsky v. Trs. of Boston Univ.*, No. 10cv10779–NG, 2010 WL 5437289, at \*11 (D. Mass. Dec. 27, 2010) (dismissing breach of contract claim under Massachusetts law because it "failed to offer what exactly the alleged contract promised with regard to her educational environment, offering no quotations from the BU handbook, promotional materials, internship descriptions, or class syllabi."); *Guckenberger*, 974 F. Supp. at 148-50 (although a university's relationship with its students "is contractual in nature . . . courts should be slow to intrude into the sensitive area of the student-college relationship" unless the university's promise is "definite and certain").

Plaintiffs' reliance on student fees is also misplaced because they do not specifically allege which fees should purportedly be refunded.  They identify certain fees only "by way of example" and may "include other fees that are not listed" in the Amended Complaint.  Am. Compl. ¶ 23. Moreover, plaintiffs point to graduate and law school fees, *id.* ¶ 21-22, which by definition, could not have been paid by Anna Foti, who is an undergraduate student, *id.* ¶ 10.  Regardless, even if plaintiffs adequately alleged the fees for which they were seeking a refund, they do not point to any contractual statements or promises regarding those fees.

Plaintiffs' failure to cite *any* specific contractual term or condition by which Suffolk guaranteed in-person instruction or services under all circumstances, including a pandemic, warrants dismissal of their breach of contract cause of action as a matter of law.

**B.      Plaintiffs Fail To Allege Any Definite Or Certain Promises**

Plaintiffs likewise fail in their efforts to translate what they admit are marketing statements on Suffolk's website into contractual obligations.  Am. Compl. ¶ 33 (Suffolk's website is its "primary method of *marketing* its services" and where "Suffolk *markets* its on-campus experience as an inducement to enrollment") (emphases added).  Although university brochures, catalogs, and policies may create a contract between a student and university in certain circumstances, to be enforceable, the underlying promise "must . . . be definite and certain so that the promisor should reasonably foresee that it will induce reliance."  *Rinsky*, No. 10cv10779–NG, 2010 WL 5437289, at *11 (quoting *Guckenberger*, 974 F. Supp. at 150); *see also Morris*, 2004 WL 369106, at *3 n.6 ("To the extent that [plaintiff] claims that certain promotional materials also formed the basis of a contract with Brandeis and that Brandeis breached its 'generalized representations' to treat its students with 'fairness and beneficence,' any promises contained in these materials were too vague and indefinite to form an enforceable contract.").  For example, vague or aspirational representations in a student handbook are not contractually enforceable.  *G v. Fay Sch., Inc. by & through its Bd. of Trustees*, 282 F. Supp. 3d 381, 399 (D. Mass. 2017), *aff'd sub nom. G. v. Fay Sch.*, 931 F.3d 1 (1st Cir. 2019) (applying Massachusetts law).  Plaintiffs do not allege that any of the generalized marketing statements cited in the Amended Complaint were incorporated into an express contract; accordingly, plaintiffs must allege that the University's marketing statements are so definite Suffolk could reasonably foresee that students would contractually rely on them.

14

In fact, the Amended Complaint does not identify "definite" or "certain" statements regarding the method of instruction that Suffolk would provide.  Plaintiffs have not alleged a *single statement* promising in-person instruction or precluding remote learning.  Instead, they rely on marketing statements that are too vague and aspirational to create a contract and have no bearing on the form of instruction or the delivery of Suffolk's curriculum.  *See e.g.*, Am. Compl. ¶ 33 ("A world of academic possibilities awaits at the College, all just steps away from everything that makes Boston the ideal place to learn and live.").  As Judge Stearns recently held in dismissing similar claims against Northeastern University, "marketing materials emphasizing 'in-person experiences' . . . as well as a few cursory descriptions on the university's website of the differences between classroom courses and online courses . . . [do] not give [the university] any definite notice of the derivation of the alleged contractual right to in-person instruction."  *Bahrani v. Northeastern Univ.*, Case No. 1:20-cv-10946, Dkt. 39 (D. Mass Nov. 6, 2020) (applying Massachusetts law).

In short, plaintiffs fail to state a contract claim because they have not plausibly alleged any agreement with Suffolk that guarantees a right to exclusively in-person instruction in exchange for tuition under all circumstances, even during a pandemic.  The First Circuit's decision in *G. v. Fay School* is illustrative.  There, parents of a student pointed to "five pages" of a student handbook including the school's "core values" and commitment to diversity, which, when read together provided that the school "would help, work with, and respect students in physical need."  931 F.3d at 12 (internal quotations omitted).  The Circuit affirmed dismissal of a breach of contract claim based on these generalized statements because they were not a "sufficiently definite promise to justify reasonable reliance" that the school would modify its educational equipment to accommodate the student's disability.  *Id*. at 12-13 (internal citations and quotations omitted).  The handbook statements were "exactly the sort of generalized, aspirational statements that are

15

insufficiently definite to form a contract." *Id*. Likewise, in *Shin v. Massachusetts Institute of Technology*, a student claimed MIT breached its contract by failing to provide student medical statements. No. 020403, 2005 WL 1869101, at *7 (Mass. Super. Ct. June 27, 2005). The student asserted reliance on MIT's By-Laws as the basis of the purported contract. *Id*. In granting MIT's motion for summary judgment, the court held the By-Laws' commitment "to provide high quality, low barrier comprehensive health services to the MIT Community" was "not 'definite and certain' and [was] 'too vague and indefinite to form an enforceable contract.'" *Id*. (quoting *Guckenberger*, 974 F. Supp. at 152; *Morris*, 2004 WL 369106, at *3). The same is true here. The website statements cited by plaintiffs are simply "too vague and indefinite to form an enforceable contract" to provide in-person rather than remote instruction. *Morris*, 2004 WL 369106, at *3 n.6. This is particularly so when remote instruction advances a student uninterrupted toward an anticipated degree in courses with the same professors, credits and classmates.

Even more fundamentally, plaintiffs do not allege they actually read or relied on the website statements they claim form the basis of their alleged contract with Suffolk. These same deficiencies recently resulted in dismissal of nearly identical claims against Boston University. *See In Re: Boston Univ. Covid-19 Refund Litig.*, Case No. 1:20-cv-10827-RGS, Dkt. 48 (D. Mass. Nov. 4, 2020) (applying Massachusetts law) (dismissing complaint that "cites to marketing materials which generally imply the existence of in-person instruction" but "does not allege that any named plaintiff ever read these materials—let alone that they relied on the materials in choosing to enroll at BU" and "does not actually allege that the named plaintiffs were denied access on any occasion" to the university's facilities).

Plaintiffs' allegations regarding student fees suffer from similar deficiencies. They do not allege any statements even remotely bearing on student fees, let alone clear and definite promises

to provide in-person services in exchange for those fees.  To the contrary, plaintiffs simply allege fees were charged to "provide[] support" for various services, *id*. ¶¶ 48-49, and that they paid the fees "in exchange for access to the campus facilities for which those fees were paid," *id*. ¶ 46.  But as Judge Stearns noted in *Chong*, "[b]ecause students pay [these fees] to 'support' certain facilities during terms for which those students are enrolled in classes, i.e., not to gain access to any on-campus facility or resource, plaintiffs have not stated a claim for breach of contract with respect to these fees."  2020 WL 5847626, at *4.

### C.   The Documents Plaintiffs Cite Authorize Suffolk to Change Its Educational Programs as Necessary

Massachusetts courts interpret student-university contracts under a "standard of reasonable expectation" by asking "what meaning the party making the manifestation, the [school], should reasonably expect the other party to give it."  *Schaer,* 432 Mass. at 478 (brackets in original) (internal citations omitted).  In addition to the deficiencies in plaintiffs' contract claim discussed above, plaintiffs also ignore express provisions in the clamed sources of their contract that make Suffolk's actions fall well within such reasonable expectations.  Specifically, Suffolk's academic catalog, which plaintiffs allege as one basis of their supposed contract with Suffolk (*see* Am. Compl. ¶ 65; *see also id.* ¶¶ 25-26) expressly permits Suffolk to amend its academic programs.

As the first page of the catalog notifies students, Suffolk "reserves the right to change, discontinue, or add academic requirements, courses or programs of study at any time" and "[s]uch changes may be made without notice, although every effort will be made to provide timely notice to students."  Ex. 1 (2019-2020 academic catalog homepage).  By doing so, the catalog simply adopts and incorporates the broad discretion afforded universities to determine what is taught and how it is taught.  *See Sweezy*, 354 U.S. at 263 (Frankfurter, J., concurring in result); *Schaer* 432

Mass. at 482 (recognizing "the principle that '[c]ourts are chary about interfering with academic and disciplinary decisions made by private colleges and universities'"); *see also Cuesnongle*, 713 F.2d at 885 (holding that university catalog's reservation of rights "to revise or change rules, charges, fees, schedules, courses, requirements for degrees and any other regulations affecting students whenever considered necessary or desirable" precluded student claims about closing sections of courses, reducing student services, inadequate student facilities, refusing to reimburse certain fees and charging fees for activities allegedly not held).  Suffolk exercised just such reserved discretion when it announced it would convert its course offerings to remote learning in order to protect students and comply with governmental orders.  Am. Compl. ¶¶ 1, 34.

Combined with the lack of any contractual promise requiring in-person instruction under all circumstances, Suffolk's clear notice to students that it could make "change[s] to academic requirements, courses or programs of study at any time" precludes any reasonable expectation that Suffolk was obligated to provide exclusively in-person education, much less during a pandemic.

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR UNJUST ENRICHMENT

Plaintiffs' cause of action for unjust enrichment is not cognizable because it is duplicative of their contract claim.  But even if it were permissible, the Amended Complaint fails to allege necessary elements of an unjust enrichment cause of action.

*First*, under Massachusetts law, an unjust enrichment claim is not cognizable where a plaintiff has an available claim for breach of contract, irrespective of whether such a claim is viable.  *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 16 (1st Cir. 2017).  Here as in *Chong*, where similar unjust enrichment claims were dismissed based on contract claims relying on the same underlying facts, "it is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." 2020 WL 5847626, at *4 (quoting *Shaulis*, 865 F.3d at 16); *accord*

*Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 190 (D. Mass. 2019) (dismissing unjust enrichment claim under Massachusetts law where plaintiffs had a contractual relationship with the defendant but their separately asserted breach of contract claim was insufficient to state a claim for relief).  The same result is warranted here, where plaintiffs base their contract and unjust enrichments on the same factual allegations.

*Second*, plaintiffs fail to plead facts showing a "retention of money or property of another against the fundamental principles of justice or equity and good conscience."  *Taylor Woodrow Blitman Constr. Corp. v. Southfield Gardens Co.*, 534 F. Supp. 340, 347 (D. Mass. 1982) (applying Massachusetts law) (quoting 66 Am. Jur. 2d Restitution and Implied Contracts § 3 (1962)). Whether defendant's retention of a benefit "was unjust, [is] 'a quality that turns on the reasonable expectations of the parties.'"  *Metro. Life Ins. Co. v. Cotter*, 464 Mass. 623, 644 (2013) (quoting *Global Investors Agent Corp. v. Nat'l Fire Ins. Co*., 76 Mass. App. Ct. 812, 826 (2010)).

Here, plaintiffs' unjust enrichment claim does not plausibly allege an obligation for Suffolk to issue refunds because, in the face of a pandemic and related emergency orders, Suffolk used tuition and fees to provide its students with an education in the same courses and uninterrupted credits toward their degrees.  *See* Am. Compl. ¶ 34.  Plaintiffs do not allege any facts indicating that Suffolk used tuition and fees for anything other than the cost of student education and activities.  Indeed, where a school continues to provide its students with academic instruction and credits and services, Massachusetts courts have held that it is not inequitable or improper to retain tuition and fees paid for those services.  For example, in *Bleiler,* the court rejected under Massachusetts law a student's unjust enrichment claim seeking a tuition reimbursement after he did not receive a degree due to being expelled through a disciplinary action because "[the plaintiff] paid for and received an education, academic credit, room, board and other services," even if he

19

did not receive a degree.  2013 WL 4714340, at *18; *see also Thornton v. Harvard Univ.*, 2 F. Supp. 2d 89, 95 (D. Mass. 1998) (dismissing equitable claims under Massachusetts law regarding a loan repayment program because the plaintiff did not "reasonably rely" on a promise made by the university).  If failure to refund tuition and fees does not support a claim for unjust enrichment even where students do not attend courses, and thus (unlike here) are not given *any* education, it cannot support such a claim here.

Moreover, the Amended Complaint does not explain why it would be unjust for Suffolk to retain and use tuition and fees for the very purposes for which they were paid—the education and support of its students.  Plaintiffs also do not allege the kind of unfair profits that can demonstrate "unjust enrichment of one party and unjust detriment to the other party."  *Salamon v. Terra*, 394 Mass. 857, 859 (1985); *see Blake v. Smith*, No. 0300003B, 2006 WL 4114305, at *10 (Mass. Super. Ct. Dec. 11, 2006) (dismissing unjust enrichment claim because plaintiff failed to show that defendants "have allegedly been unjustly enriched . . . or have received improper benefits").  In sum, plaintiffs fail to allege any inequitable benefit to Suffolk, requiring dismissal their claim for unjust enrichment as a matter of law.

## <u>CONCLUSION</u>

For the reasons stated, this Court should dismiss plaintiffs' Amended Complaint.

DATED:  November 18, 2020             Respectfully submitted,

                                      QUINN EMANUEL URQUHART &
                                      SULLIVAN, LLP


                                  By */s/ Kathleen M. Sullivan*
                                      Kathleen M. Sullivan (BBO No. 551053)
                                      Shon Morgan (*pro hac vice*)
                                      Crystal Nix-Hines (*pro hac vice*)
                                      T. Scott Mills (*pro hac vice*)
                                      865 South Figueroa Street, 10th Floor
                                      Los Angeles, California 90017-2543
                                      Telephone:     (213) 443-3000
                                      Facsimile:     (213) 443-3100
                                      kathleensullivan@quinnemanuel.com
                                      shonmorgan@quinnemanuel.com
                                      crystalnixhines@quinnemanuel.com
                                      scottmills@quinnemanuel.com

                                      Harvey Wolkoff (BBO No.532880)
                                      Phillip Syers (BBO No. 699241)
                                      111 Huntington Ave., Suite 520
                                      Boston, MA 02199-3600
                                      Telephone:     (612) 712-7100
                                      Facsimile:     (612) 712-7200
                                      harveywolkoff@quinnemanuel.com
                                      philsyers@quinnemanuel.com
                                      *Attorneys for Defendant,*
                                      *Suffolk University*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing document filed today through the Court's CM/ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

Dated:  November 18, 2020

*/s/ Kathleen M. Sullivan*
Kathleen M. Sullivan
