UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
————————————————————————————————     )
JULIA DURBECK, individually          )
and on behalf of all others          )
similarly situated,                  )
                                     )
                Plaintiff,           )
                                     )
         v.                          )     CIVIL ACTION
                                     )     NO. 20-10985-WGY
SUFFOLK UNIVERSITY,                  )
                                     )
                Defendant.           )
————————————————————————————————     )
                                     )
MARY ANN FOTI and ANNA FRANCESCA     )
FOTI, individually and on behalf     )
of all others similarly situated,    )
                                     )
                Plaintiffs,          )
                                     )
         v.                          )     CIVIL ACTION
                                     )     NO. 20-11581-WGY
SUFFOLK UNIVERSITY,                  )
                                     )
                Defendant.           )
————————————————————————————————     )
```

YOUNG, D.J.                                      June 23, 2021

**MEMORANDUM & ORDER**

## I.   INTRODUCTION

Earlier this year, this Court had occasion to recognize a few of the consequences of COVID-19 in Massachusetts.  See generally Delaney v. Baker, Civil Action No. 20-11154-WGY, 2021 WL 42340 (D. Mass. Jan. 6, 2021).  This matter involves another:

defendant Suffolk University's ("Suffolk") mid-semester transition to an entirely virtual experience.

In two putative class actions, Julia Durbeck, Mary Ann Foti, and Anna Francesca Foti (collectively, the "Plaintiffs") bring breach of contract and unjust enrichment claims against Suffolk based on its decision to close its campus and transition to online learning in the wake of COVID-19.  Pending before the Court are Suffolk's motions to dismiss for failure to state a claim upon which relief can be granted.  For the reasons elucidated below, the motions are DENIED.

**A.    Factual Background**

The Plaintiffs allege that Suffolk offers two types of degree programs: "in-person, hands-on programs" and "fully online distance-learning programs."  Pl.'s Am. Class Action Compl. & Demand Jury Trial ("Durbeck's Am. Compl.") ¶ 21, ECF No. 20 (Civil Action No. 20-10985-WGY); First Am. Class Action Compl. & Demand Jury Trial ("Fotis' Am. Compl.") ¶ 27, ECF No. 6 (Civil Action No. 20-11581-WGY).  Suffolk allegedly charges more for the in-person option than for the online option.  Durbeck's Am. Compl. ¶ 26; Fotis' Am. Compl. ¶ 31.  According to the Plaintiffs, that is because the in-person option involves more than the "basic academic instruction" included in the online option.  Durbeck's Am. Compl. ¶ 28; Fotis' Am. Compl. ¶ 12.  Specifically, the Plaintiffs plead that in exchange for the

higher cost of attendance, Suffolk "promised" to provide
benefits and services unique to the in-person option, including
corporeal interactions with faculty, peers, academic and
athletic facilities, affinity and extracurricular groups, and
hands-on experiential opportunities, for the entire spring 2020
semester.  Durbeck's Am. Compl. ¶¶ 28-30; Fotis' Am. Compl.
¶¶ 12, 72.  Based on these alleged benefits and services, the
Plaintiffs opted for the in-person experience and paid fees and
a higher tuition rate to enroll as undergraduate students for
the spring 2020 semester.  Durbeck's Am. Compl. ¶¶ 12, 18, 32-
41, 120; Fotis' Am. Compl. ¶¶ 10, 19, 46-50, 68.

The Plaintiffs do not assert that a written contract
provided for these benefits and services.  See Durbeck's Am.
Compl. ¶ 72; Fotis' Am. Compl. ¶ 25.  Instead, the Plaintiffs
allege that "[t]he terms of this contract are as implied or set
forth by [Suffolk] through its website, academic catalogs,
student handbooks, marketing materials and other circulars,
bulletins, and publications."  Durbeck's Am. Compl. ¶ 72; Fotis'
Am. Compl. ¶ 26 ("The contractual relationship between Suffolk
and Plaintiffs and Class members is based on various written
materials, including, without limitation, course descriptions,
academic catalogs, student handbooks, account statements,
emails, representations and statements made by Suffolk through
various media, including its website, and other materials.").

Specifically, Durbeck quotes a series of Suffolk's
"publications with respect to non-online classes," which
describe "the on-campus experience, including numerous
references to student activities; campus amenities; class size
and student/teacher ratios; campus diversity, campus location,
and the like."  Durbeck's Am. Compl. ¶ 80; see id. ¶¶ 75-110.
For their part, the Fotis quote a series of Suffolk's statements
with respect to "its on-campus experience," including:
"Distinguished [f]aculty provide individual attention to their
students in small classes while encouraging open, independent
thinking and an appreciation of diverse cultures, perspectives
and peoples"; "Students find many opportunities to combine their
academic experience with hands-on experience through
internships, service learning and a broad range of
extracurricular activities"; "Days, night and weekends --
Suffolk students are part of an immersive living and learning
experience in the heart of an international city"; "change your
perspective and deepen your knowledge as you learn in our
classrooms and at the city's top employers.  A world of academic
possibilities awaits at the College, all just steps away from
everything that makes Boston the ideal place to learn and live";
"The Suffolk University campus is located right in the heart of
downtown Boston and brings one-of-a-kind city experiences into
the classroom"; and "Since 1906, Suffolk University has been

woven into Boston's thriving urban landscape, offering a truly
immersive environment in which to live, learn and explore.  It's
the ideal location for Suffolk to provide students with the keys
to successful lives and careers; access, opportunity and
experience."  Fotis' Am. Compl. ¶ 33 (footnotes omitted).  The
Plaintiffs allege that the implied-in-fact contract also derives
from their payment of fees and tuition, Durbeck's Am. Compl.
¶¶ 71, 150; Fotis' Am. Compl. ¶¶ 24, 46, 64, 70, and their
registration for and attendance at on-campus classes, Durbeck's
Am. Compl. ¶¶ 111-117; Fotis' Am. Compl. ¶¶ 29, 68-69.

In March 2020, approximately halfway through the spring
2020 semester, see Durbeck's Am. Compl. ¶¶ 43-44; Fotis' Am.
Compl. ¶ 20, Suffolk asked its students (including those who,
like the Plaintiffs, had already paid fees and tuition for the
entire spring 2020 semester) not to return to campus after
spring break, Durbeck's Am. Compl. ¶ 46; Fotis' Am. Compl. ¶ 34.
Suffolk subsequently closed all on-campus facilities, suspended
all in-person services and activities, and moved all classes to
virtual platforms.  Durbeck's Am. Compl. ¶¶ 46-49; Fotis' Am.
Compl. ¶¶ 34-36.

Around the same time, Suffolk announced, "Because students
will be receiving academic credit and grades for virtual classes
and will have access to support and guidance from both faculty
and staff, no refunds of tuition will be made."  Durbeck's Am.

Compl. ¶ 51; Fotis' Am. Compl. ¶ 7.  Suffolk has not refunded the Plaintiffs' fees or tuition for the spring 2020 semester. Durbeck's Am. Compl. ¶¶ 51, 54; Fotis' Am. Compl. ¶ 7.

**B.  Procedural History**

Durbeck and the Fotis filed the operative complaints on October 1, 2020 and October 23, 2020, respectively.  Durbeck's Am. Compl.; Fotis' Am. Compl.  Suffolk moved to dismiss these complaints on October 29, 2020 and November 18, 2020, respectively. Def. Suffolk University's Mot. Dismiss, ECF No. 25 (Civil Action No. 20-10985-WGY); Def. Suffolk University's Mot. Dismiss First Am. Compl., ECF No. 16 (Civil Action No. 20-11581-WGY).

The parties have fully briefed both motions.  As to Durbeck, Civil Action No. 20-10985-WGY, see generally Def.'s Am. Mem. Law Supp. Its Mot. Dismiss Am. Compl. ("Def.'s Mem. Supp. Mot. Dismiss Durbeck"), ECF No. 29; Pl.'s Mem. Opp'n Def.'s Mot. Dismiss Am. Compl. ("Durbeck's Opp'n"), ECF No. 27; Reply Mem. Supp. Def.'s Mot. Dismiss Am. Class Action Compl. ("Def.'s Reply Supp. Mot. Dismiss Durbeck"), ECF No. 41.  As to the Fotis, Civil Action No. 20-11581-WGY, see generally Def.'s Mem. Law Supp. Mot. Dismiss First Am. Compl. ("Def.'s Mem. Supp. Mot. Dismiss Fotis"), ECF No. 17; Pl.'s Opp'n Def.'s Mot. Dismiss ("Fotis' Opp'n"), ECF No. 19; Reply Mem. Supp. Def.'s Mot. Dismiss Consolidated Compl. ("Def.'s Reply Supp. Mot. Dismiss

Fotis"), ECF No. 28.  The parties later filed notices of
supplemental authority.

This Court heard argument on February 2, 2021 and took the
matter under advisement.  See Elec. Clerk's Notes, ECF No. 49
(Civil Action No. 20-10985-WGY); Elec. Clerk's Notes, ECF No. 35
(Civil Action No. 20-11581-WGY).

## II.  ANALYSIS

To withstand a motion to dismiss, a complaint must "state a
claim upon which relief can be granted."  Fed. R. Civ. P.
12(b)(6).  The complaint must include sufficient factual
allegations which, when accepted as true, "state a claim to
relief that is plausible on its face."  Bell Atl. Corp. v.
Twombly, 550 U.S. 544, 570 (2007).  The Court will "draw every
reasonable inference" in favor of the plaintiff, Berezin v.
Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000), but it will
disregard statements that "merely offer legal conclusions
couched as fact or threadbare recitals of the elements of a
cause of action," Ocasio-Hernández v. Fortuño-Burset, 640 F.3d
1, 12 (1st Cir. 2011) (alterations and quotations omitted).

Suffolk moves to dismiss on two grounds.  First, Suffolk
asserts that the Plaintiffs impermissibly seek to recover for
educational malpractice and invade Suffolk's academic freedom.
Second, Suffolk argues that the Plaintiffs fail to state a claim

for breach of contract or unjust enrichment.  This Court is not persuaded by either contention.

### A.    Educational Malpractice

Claims for educational malpractice challenge "the sufficiency or quality of education provided by educational intuitions." Zagoria v. N.Y. Univ., 20 Civ. 3610(GBD)(SLC), 2021 WL 1026511, at *2 (S.D.N.Y. Mar. 17, 2021).  Despite "the number of institutions of higher learning in the Commonwealth, Massachusetts' position regarding the viability of educational malpractice claims is unclear." Moran v. Stonehill Coll., Inc., 2077CV00431, 2021 WL 965754, at *3 (Mass. Super. Ct. Feb. 16, 2021) (Howe, J.); see Doe v. Town of Framingham, 965 F. Supp. 226, 229-30 (D. Mass. 1997) (O'Toole, J.) (stating that "there is no need to construct what is likely to be a redundant and clumsy common law remedy" for "educational malpractice").  The Plaintiffs concede that educational malpractice claims are not viable in most jurisdictions.  Durbeck's Opp'n 6-7.  See Ambrose v. N.E. Ass'n of Schs. & Colls., Inc., 252 F.3d 488, 499 (1st Cir. 2001) (applying Maine law) ("[C]ourts consistently have rejected students' claims of 'educational malpractice' against schools.").  Hence as "master to decide what law [they] will rely upon," see The Fair v. Kohler Die & Specialty Co., 228 U.S. 22, 25 (1913), the Plaintiffs have chosen not to pursue educational malpractice claims.  Durbeck's Am. Compl. ¶ 122

("This cause of action does not seek to allege 'educational malpractice.'").

Nevertheless, this Court must ensure that the Plaintiffs' claims are not merely "cloak[ed]" with "creative labeling." See Ambrose, 252 F.3d at 497. However styled, educational malpractice claims raise a multitude of "strong policy arguments that militate against" their adjudication. Id. at 499. "These policy concerns include the lack of a satisfactory standard of care by which to evaluate educators' professional judgments and the patent undesirability of having courts attempt to assess the efficacy of the operations of academic institutions." Id.

It is axiomatic that "the educational malpractice doctrine does not foreclose all lawsuits by students." Zagoria, 2021 WL 1026511, at *3; see Grant v. Chapman Univ., No. 30-2020-01146699-CU-BC-CXC, 2021 WL 684581, at *3 (Cal. Super. Ct. Jan. 22, 2021) (in COVID-19 tuition refund dispute, stating that "just because a claim touches on educational issues does not mean it sounds in 'educational malpractice'"); Smith v. Ohio State Univ., No. 2020-00321JD, 2020 WL 5694224, at *2 (Ohio Ct. Cl. Sept. 09, 2020) (in COVID-19 tuition refund dispute, stating that "[t]he mere mention of possible consequences to plaintiff's educational or professional future does not render plaintiff's complaint a claim for educational malpractice"); e.g., White v. Fessenden Sch., Civil Action No. 07-10908-JLT, 2007 WL 9798267,

at *3 (D. Mass. July 17, 2007) (Tauro, J.) (rejecting defendant-school's characterization of student's claims as alleging "educational malpractice").  Breach of contract claims, for instance, do not allege educational malpractice where the "essence" of the plaintiff's claims is not "that the institution failed to perform adequately a promised educational service, but rather that it failed to perform that service at all."  Ross v. Creighton Univ., 957 F.2d 410, 417 (7th Cir. 1992); see Zagoria, 2021 WL 1026511, at *3 ("When the essence of the complaint moves beyond the effectiveness of education and into more specific promises for specified services, a student may be able to sue for breach of contract.").

Adopting this reasoning, courts across the country have rejected defendant-schools' educational malpractice arguments on motions to dismiss in nearly every COVID-19 tuition refund dispute.  The most relevant of these decisions apply Massachusetts law.  This Court is aware of eight such decisions.

In six federal actions, Boston College, Boston University, Brandeis University, Harvard College, and Northeastern University advanced educational malpractice arguments which were substantially similar to those presently advanced by Suffolk.  Compare Def.'s Mem. Supp. Its Mot. Dismiss Am. Compl. Rules 12(b)(1) & 12(b)(6) 7-9, ECF No. 26, Rodrigues v. Bos. Coll., Civil Action No. 20-11662-RWZ (D. Mass. filed Feb. 1, 2021), and

Def.'s Mem. Supp. Def.'s Mot. Dismiss Second Consolidated Class
Action Compl. 7-11, ECF No. 56, In re Bos. Univ. COVID-19 Refund
Litig., Civil Action No. 20-10827-RGS (D. Mass. filed Dec. 9,
2020), and Def.'s Mem. Law Supp. Mot. Dismiss Consolidated Class
Action Compl. 5-8, ECF No. 22, Omori v. Brandeis Univ., Civil
Action No. 20-11021-NMG (D. Mass. filed Nov. 27, 2020), and
Def.'s Mem. Supp. Its Mot. Dismiss First Am. Consolidated Compl.
8-10, ECF No. 34, Barkhordar v. President & Fellows of Harvard
Coll., Civil Action No. 20-cv-10968-IT (D. Mass. filed Oct. 7,
2020), and Def.'s Mem. Supp. Mot. Dismiss Second Am. Class
Action Compl. 25-27, ECF No. 52, Bahrani v. Ne. Univ., Civil
Action No. 20-10946-RGS (D. Mass. filed Dec. 9, 2020), and
Def.'s Mem. Law Supp. Mot. Dismiss Third Am. Class Action Compl.
24-25, ECF No. 44, Chong v. Ne. Univ., Civil Action No. 20-
10844-RGS (D. Mass. filed Oct. 27, 2020), with Def.'s Mem. Supp.
Mot. Dismiss Durbeck 5-10, and Def.'s Mem. Supp. Mot. Dismiss
Fotis 6-11.  Other sessions of this Court rejected these
advances.  See Rodrigues v. Bos. Coll., Civil Action No. 20-
11662-RWZ, 2021 WL 1439784, at *1 (D. Mass. Apr. 15, 2021)
(Zobel, J.); In re Bos. Univ. COVID-19 Refund Litig., Civil
Action No. 20-10827-RGS, 2021 WL 66443, at *2 n.5 (D. Mass. Jan.
7, 2021) (Stearns, J.) ("The court is not convinced that
plaintiffs' contract claim is a disguised educational
malpractice claim, as [the university] implies.  The [complaint]

appears to challenge the fact of the switch from in-person to online instruction, not the quality of the online education [the university] provided."); Barkhordar v. President & Fellows of Harvard Coll., Civil Action No. 20-cv-10968-IT, 2021 WL 2535512, at *3 (D. Mass. June 21, 2021) (Talwani, J.) (same); Bahrani v. Ne. Univ., Civil Action No. 20-10946-RGS, 2020 WL 7774292, at *2 n.1 (D. Mass. Dec. 30, 2020) (Stearns, J.) (same); Chong v. Ne. Univ., Civil Action No. 20-10844-RGS, 2020 WL 7338499, at *2 n.1 (D. Mass. Dec. 14, 2020) (Stearns, J.) (same); Omori v. Brandeis Univ., Civil Action No. 20-11021-NMG, 2021 WL 1408115, at *2 (D. Mass. Apr. 13, 2021) (Gorton, J.) ("The complaint challenges neither the substance nor the quality of the specific online courses or curriculum provided by Brandeis.  Moreover, plaintiffs do not complain that the online education provided by Brandeis was ineffective, or that they were unable to learn the relevant subject matter or earn academic credits.  Instead, plaintiffs seek the reimbursement for services for which they purportedly bargained and paid, i.e. in-person instruction and access to on-campus facilities.  Such claims sound in contract, not educational malpractice, and are therefore justiciable." (citations omitted)).

In the two other decisions applying Massachusetts law, the Massachusetts Superior Court rejected Stonehill College's and the University of Massachusetts' educational malpractice

arguments.  See Moran, 2021 WL 965754, at *3 ("Moran does not
challenge the judgment or conduct of his son's educators, or
Stonehill's right to academic freedom and the discretion to
operate its educational programs without unwarranted judicial
intervention.  He does not challenge the substance of
Stonehill's educational programming in a way that implicates
First Amendment concerns.  In addition, Moran does not challenge
the necessity of the closure of Stonehill's campus due to the
pandemic.  The question raised by the First Amended Complaint is
not whether Stonehill was justified in closing its campus, but
rather where that risk and financial burden should be
contractually allocated."); Holmes v. Univ. of Mass., No.
2084CV01025-B, 2021 WL 1099323, at *2 & n.3 (Mass. Super. Ct.
Mar. 8, 2021) (Roach, J.) (agreeing "with the many courts who
have considered this question, locally and farther afield, that
the sorts of claims pleaded here are not claims for 'educational
malpractice,'" and stating that under Massachusetts law, "an
implied contract based on different facets of the parties'
relationship would not be making new law or wading into the
question of how the University teaches its students") (brackets
and quotations omitted)).

        Setting aside, for a moment, the issue of damages, the
Plaintiffs' theory of liability is clear: they allege that
Suffolk promised one thing -- an in-person experience for the

entire spring 2020 semester -- but delivered another.  Durbeck's

Am. Compl. ¶¶ 28-30, 51, 54; Fotis' Am. Compl. ¶¶ 7, 24, 37.

Thus the "essence" of this action is not that Suffolk "failed to

perform adequately a promised educational service" when it

delivered a virtual experience, but rather that Suffolk failed

to deliver the promised in-person experience entirely in the

second half of the spring 2020 semester.  See Ross, 957 F.2d at

417; see also Spiegel v. Trs. of Ind. Univ., No. 53C06-2005-CT-

000771, 2020 WL 7135320, at *2 (Ind. Cir. Ct. Nov. 19, 2020) (in

COVID-19 tuition refund dispute, stating that "[t]he essence of

Plaintiff's claims is that he contracted for in-person classes

and certain services, which he never received and for which he

paid a premium.  This does not challenge the quality of the

education, but the actual product and service delivered").  This

Court concludes, therefore, that the Plaintiffs' claims are not

merely "cloak[ed]" with "creative labeling."  See Ambrose, 252

F.3d at 497; see also Smith, 2020 WL 5694224, at *2 (in COVID-19

tuition refund dispute, rejecting defendant-school's educational

malpractice argument because "[t]he essence of plaintiff's

breach of contract claim is that she contracted for in-person

classes and received online classes instead"); Milanov v. Univ.

of Mich., No. 20-000056-MK, 2020 WL 7135331, at *3 (Mich. Ct.

Cl. July 27, 2020) (in COVID-19 tuition refund dispute,

rejecting defendant-school's educational malpractice argument

because the plaintiffs alleged "that the university promised one method of instruction, charged tuition and fees commensurate with that method of instruction, yet provided a different (allegedly lesser) method of instruction").

The issue of damages, however, gives this Court pause.  See In re Bos. Univ. COVID-19 Refund Litig., 2021 WL 66443, at *2 n.5 (in COVID-19 tuition refund dispute, recognizing that "it is possible that the measure of damages for this alleged breach will so inextricably implicate the issue of quality as to render the claim non-actionable"); Bahrani, 2020 WL 7774292, at *2 n.1 (same); Chong, 2020 WL 7338499, at *2 n.1 (same).  Suffolk points out that according to the Plaintiffs, the transition to an entirely virtual experience "was not commensurate with in-person instruction," Def.'s Mem. Supp. Mot. Dismiss Durbeck 6 (quoting Durbeck's Am. Compl. ¶ 53), and was "subpar in practically every aspect," Def.'s Mem. Supp. Mot. Dismiss Fotis 7 (quoting Fotis' Am. Compl. ¶ 6).  At oral argument, Suffolk contended that the Plaintiffs seek damages equal to the difference between "the fair market value of online learning versus the fair market value of live in-person instruction."  Transcript 6, ECF No. 51 (citing Durbeck's Am. Compl. ¶ 128).  Taken together, Suffolk asserts, these facts uncloak the Plaintiffs' claims as alleging educational malpractice.  Def.'s Reply Supp. Mot. Dismiss Fotis 5 ("By their

very nature, these claims require the Court to inject itself
into university decision-making as to how to respond to a
pandemic and to undertake a qualitative evaluation of Suffolk's
educational program to determine whether each remote class
offered the same 'value' as its in-person counterpart.").  At
least two courts have agreed with this argument, though neither
applied Massachusetts law.  See Gociman v. Loyola Univ. of Chi.,
Case No. 20 C 3116, 2021 WL 243573, at *3 (N.D. Ill. Jan. 25,
2021) (applying Illinois law); Lindner v. Occidental Coll., Case
No. CV 20-8481-JFW(RAOx), 2020 WL 7350212, at *7 (C.D. Cal. Dec.
11, 2020) (applying California law).  But see McCarthy v. Loyola
Marymount Univ., Case No.: 20-cv-04668-SB (JEMx), 2021 WL
268242, at *3 n.2 (C.D. Cal. Jan. 8, 2021) (stating that "the
discussion about the educational malpractice doctrine in
[Lindner v. Occidental College] appears to be dicta").

At this stage, the Court is unconvinced.  As an initial
matter, the calculation of market damages does not necessarily
run afoul of the educational malpractice doctrine.  See Bergeron
v. Rochester Inst. of Tech., 20-CV-6283 (CJS), 2020 WL 7486682,
at *8 & n.7 (W.D.N.Y. Dec. 18, 2020) (in COVID-19 tuition refund
dispute, rejecting defendant-school's argument that plaintiffs'
"alleged damages would require the Court to speculate about the
difference between the subjective value of distance learning and
the subjective value of on-campus, in-person instruction," and

ruling that the calculation of "the difference in the fair
market value of the services and access for which they
contracted, and the services and access which they actually
received" was a "sufficiently specific" formulation of "market
damages" to be proved by objective expert testimony).
Furthermore, although factual development might reveal that the
Plaintiffs' evidence of damages depends on a qualitative
evaluation of Suffolk's educational services, see, e.g.,
Durbeck's Am. Compl. ¶ 53 (alleging that the educational
services delivered were "not commensurate with in-person
instruction"); Fotis' Am. Compl. ¶ 6 (alleging that the
educational services delivered were "subpar in practically every
aspect"), it might reveal instead that the Plaintiffs' evidence
of damages depends only on a quantitative calculation of the
difference between, for instance, the cost of attending
Suffolk's online degree program and the cost of attending
Suffolk's in-person degree program, see, e.g., Durbeck's Am.
Compl. ¶ 27 (alleging that Suffolk "charged $1,519 per credit
hour for its on-campus MBA program, and only $1,171 per
identical credit hour online, representing a discount of roughly
23%"); Fotis' Am. Compl. ¶ 21 (alleging that Suffolk charged
$1,574 per credit hour for "the majority of traditional masters
programs" but $1,213 per credit hour for "all online masters
programs").  Using Suffolk's own valuations to calculate

damages, if that is indeed the Plaintiffs' tack, might require only basic arithmetic rather than subjective determinations of educational quality.

Against this backdrop, dismissal would be premature. See Hassan v. Fordham Univ., No. 20-CV-3265 (KMW), 2021 WL 293255, at *3-4 (S.D.N.Y. Jan. 28, 2021) (in COVID-19 tuition refund dispute, rejecting defendant-school's educational malpractice argument because allegations that the benefits and services delivered were "subpar in practically every aspect" and "in no way the equivalent of an in-person education" primarily "impact[ed] the damages element" rather than "formed the essence of the Complaint" (quotations omitted)); Saroya v. Univ. of the Pac., Case No. 20-cv-03196-EJD, 2020 WL 7013598, at *3-4 (N.D. Cal. Nov. 27, 2020) (similar); Metzner v. Quinnipiac Univ., Case No. 20-cv-00784 (KAD), 2021 WL 1146922, at *8 (D. Conn. Mar. 25, 2021) (in COVID-19 tuition refund dispute, stating that "if in the future it becomes manifest that resolving Plaintiffs' claims or assessing their damages will ultimately entail evaluation of whether a course conducted remotely was less valuable than one conducted in person -- and if so, by how much -- the Court will reassess whether it should decline to enter the classroom and determine whether or not the judgments and conduct of professional educators were deficient" (quotations omitted)); Buschauer v. Columbia Coll. Chi., No. 20 C 3394, 2021 WL

1293829, at *4 (N.D. Ill. Apr. 6, 2021) (similar); see also
Oyoque v. Depaul Univ., Case No. 20 C 3431, 2021 WL 679231, at
*2 (N.D. Ill. Feb. 21, 2021) (in COVID-19 tuition refund
dispute, recognizing that "[t]o the extent the plaintiffs
discuss the difference in value between in-person and online
education, that discussion is limited to alleging damages from
the defendant's alleged breach of contract, not an allegation
that any decreased value constitutes the breach of contract").
The Plaintiffs will have the opportunity to submit evidence of
damages before this Court determines whether their claims would
violate public policy.

> **B.   Academic Freedom**

"Academic freedom, though not a specifically enumerated
constitutional right, long has been viewed as a special concern
of the First Amendment."  Regents of the Univ. of Cal. v. Bakke,
438 U.S. 265, 312 (1978).  Universities thus "occupy a special
niche in our constitutional tradition" which protects their
freedom "to make [their] own judgments as to education . . . ."
Grutter v. Bollinger, 539 U.S. 306, 329 (2003) (quoting Bakke,
438 U.S. at 312).  The "four essential freedoms" are "to
determine for itself on academic grounds who may teach, what may
be taught, how it shall be taught, and who may be admitted to
study."  Bakke, 438 U.S. at 312 (quotations omitted) (quoting
Sweezy v. New Hampshire, 354 U.S. 234, 263 (1957) (Frankfurter,

J., concurring)).  Accordingly, "[w]hen judges are asked to
review the substance of a genuinely academic decision . . . they
should show great respect for the faculty's professional
judgment."  Regents of the Univ. of Mich. v. Ewing, 474 U.S.
214, 225 & n.11 (1985) (quoting Board of Curators of the Univ.
of Mo. v. Horowitz, 435 U.S. 78, 96 n.6 (1978) (Powell, J.,
concurring)).

Suffolk argues that "[a] judicial determination that remote
learning is a less effective and less valuable method of
instruction than in-person instruction . . . would
unconstitutionally infringe Suffolk's academic freedom 'to
determine what shall be taught and how it shall be taught.'"
Def.'s Mem. Supp. Mot. Dismiss Durbeck 10 (quoting Asociación de
Educación Privada de P.R., Inc. v. García-Padilla, 490 F.3d 1,
19 (1st Cir. 2007)); Def.'s Mem. Supp. Mot. Dismiss Fotis 10
(same).  This argument fails because the Plaintiffs do not seek
such a judicial determination.  As explicated above, the
Plaintiffs seek a judicial determination that remote learning is
different from the in-person instruction allegedly promised
them, not that the former is "less effective and less valuable"
than the latter.  See supra Section II.A.

Although public policy counsels against judicial intrusion
into certain academic areas, "principles of contract and quasi-
contract are not among those areas."  Milanov, 2020 WL 7135331,

at *3.  Thus, "[e]ven with the principle of academic freedom in mind, this Court may review university actions to ensure they comply with enforceable contracts made with students."  Burt v. Bd. of Trs. of the Univ. of R.I., C.A. No. 20-191-JJM-LDA, 2021 WL 825398, at *4 (D.R.I. Mar. 4, 2021).  This Court rules, therefore, that the academic freedom doctrine does not bar the Plaintiffs' claims.[1]  See Rhodes v. Embry-Riddle Aeronautical Univ., Inc., Case No. 20-cv-927-Orl-40EJK, 2021 WL 140708, at *3 (M.D. Fla. Jan. 14, 2021) ("The focus of this case is simply whether Defendant promised something it later failed to deliver. To answer that question, the Court need not wade into the nuances of educational or public health policy, but rather make an objective assessment of whether Defendant failed to perform

---

[1] The Court reiterates that it will accord deference to "genuinely academic decision[s]."  See Ewing, 474 U.S. at 225. Assuming without deciding that Suffolk's decision to transition to an entirely virtual experience is of that ilk, but see Patel v. Univ. of Vt. & State Agric. Coll., Case No. 20-cv-61, 2021 WL 1049980, at *5 (D. Vt. Mar. 15, 2021) (stating that defendant-school's decision to shift to online learning was not "made on academic grounds; it was instead an administrative decision made to address the exigencies of the COVID-19 pandemic" (quotations omitted)), the Court leaves for another day its analysis of the effect, if any, of Governor Baker's executive orders regarding COVID-19, see Barkhordar, 2021 WL 2535512, at *1, *6; see also Seslar v. Trs. of Purdue Univ., No. 79D02-2005-PL-000059, 2021 WL 1235493, at *4 (Ind. Super. Ct. Mar. 8, 2021) (in COVID-19 tuition refund dispute, declining to address defendant-school's argument on motion to dismiss "that the Governor's Executive Order made providing in-person instruction impossible").

on a promise to provide students with in-person instruction and access to campus facilities.").

C.   **Breach of Contract**

Suffolk contends that the Plaintiffs fail to state a claim for breach of contract because they have not identified the basis for the alleged contractual right to an in-person experience for the entire spring 2020 semester.  Def.'s Mem. Supp. Mot. Dismiss Durbeck 10-17; Def.'s Mem. Supp. Mot. Dismiss Fotis 11-18.  Suffolk further asserts that its Undergraduate Academic Catalog expressly contemplates and "permits the very actions Suffolk took."  Def.'s Mem. Supp. Mot. Dismiss Durbeck 16-17; Def.'s Mem. Supp. Mot. Dismiss Fotis 17-18.  The Plaintiffs respond that their contractual right to an in-person experience for the entire spring 2020 semester derives from representations in Suffolk's publications, the Plaintiffs' payment of fees and tuition, and their registration for and attendance at on-campus classes prior to the campus closure. Durbeck's Opp'n 10-16; Fotis' Opp'n 9-17.  The Plaintiffs also argue that Suffolk's Undergraduate Academic Catalog does not bar their claims.  Durbeck's Opp'n 16-18; Fotis' Opp'n 17-18.

1. **The Plaintiffs State a Claim for Breach of Contract.**

The central legal question before the Court is whether the Plaintiffs adequately allege the existence of an agreement between the parties for an in-person experience for the entire

spring 2020 semester.  See Def.'s Mem. Supp. Mot. Dismiss
Durbeck 10-17; Def.'s Mem. Supp. Mot. Dismiss Fotis 11-18.  The
Court answers that question in the affirmative.

"Under Massachusetts law, the elements of a breach of
contract claim are that there was an agreement between the
parties; the agreement was supported by consideration; the
plaintiff was ready, willing, and able to perform his or her
part of the contract; the defendant committed a breach of the
contract; and the plaintiff suffered harm as a result."  Squeri
v. Mount Ida Coll., 954 F.3d 56, 71 (1st Cir. 2020) (quotations
omitted).  "[I]n the absence of an express agreement, a contract
implied in fact may be found to exist from the conduct and
relations of the parties."  Id. (quotations omitted).  The
plaintiff must "state with substantial certainty the facts
showing the existence of the contract and the legal effect
thereof."  Id. (quotations omitted).

"The student-college relationship is essentially
contractual in nature."  Mangla v. Brown Univ., 135 F.3d 80, 83
(1st Cir. 1998).  "Under Massachusetts law, the promise, offer,
or commitment that forms the basis of a valid contract can be
derived from statements in handbooks, policy manuals, brochures,
catalogs, advertisements, and other promotional materials."
Guckenberger v. Bos. Univ., 974 F. Supp. 106, 150 (D. Mass.
1997) (Saris, J.).  "Where, as here, a private-school student or

former student sues a school alleging breach of contract, the standard of reasonable expectation applies," under which "courts ask, in interpreting the contractual terms, what meaning the party making the manifestation, the university, should reasonably expect the other party, the student, to give it." Walker v. President & Fellows of Harvard Coll., 840 F.3d 57, 61–62 (1st Cir. 2016) (brackets, citations, and quotations omitted) (applying Massachusetts law); see Rinsky v. Trs. of Bos. Univ., Civil Action No. 10cv10779-NG, 2010 WL 5437289, at *11 (D. Mass. Dec. 27, 2010) (Gertner, J.) ("The promise must, however, be definite and certain so that the promisor should reasonably foresee that it will induce reliance." (quotations omitted)).

Suffolk's first contention, that the representations in its publications are too "vague" and "generalized" to form an implied-in-fact contract, Def.'s Mem. Supp. Mot. Dismiss Durbeck 12-16; Def.'s Mem. Supp. Mot. Dismiss Fotis 14-17, misses the mark.[2]  The implied-in-fact contract alleged here derives not from these representations standing alone, but from these representations viewed in context with the Plaintiffs' payment

---

[2] Suffolk also points out that the Plaintiffs have not alleged that they "read" Suffolk's publications.  Def.'s Mem. Supp. Mot. Dismiss Fotis 16 (citing Elec. Order, ECF No. 48, In re Bos. Univ. COVID-19 Refund Litig., Civil Action No. 20-10827-RGS (D. Mass. Nov. 4, 2020) (Stearns, J.)); Def.'s Reply Supp. Mot. Dismiss Durbeck 11 (same).  The Court is not inclined at this early juncture to dismiss the Plaintiffs on this basis.

of fees and tuition, Durbeck's Am. Compl. ¶¶ 71, 150; Fotis' Am.
Compl. ¶¶ 24, 46, 64, 70, and the Plaintiffs' registration for
and attendance at on-campus classes prior to the campus closure,
Durbeck's Am. Compl. ¶¶ 111-117; Fotis' Am. Compl. ¶¶ 29, 68-69.
Taken together, these alleged bases are not too vague or
generalized to withstand a motion to dismiss.  See Rhodes, 2021
WL 140708, at *5 n.8 (in COVID-19 tuition refund dispute,
rejecting defendant-school's argument that its representations
were "mere puffery"); Doe v. Emory Univ., CIVIL ACTION FILE NO.
20-CV-2002-TWT, 2021 WL 358391, at *6 (N.D. Ga. Jan. 22, 2021)
(in COVID-19 tuition refund dispute, stating that although
"promotional statements cannot represent an offer to form an
express contract . . . these statements can help define the
scope of any implied contract," and concluding that when
combined with allegations concerning defendant-school's
"customary practice and the Plaintiffs' payment of tuition," a
plausible implied-in-fact contract had been pled).

     Suffolk's second suggestion, that the Plaintiffs must
"explain[] why Suffolk should have reasonably expected its
practice of offering in-person instruction would give rise to a
reasonable expectation that it would not change its practices in
response to the COVID-19 pandemic," Def.'s Reply Supp. Mot.
Dismiss Fotis 11, is unpersuasive.  The Plaintiffs need only
allege, as they have here, that Suffolk should have reasonably

foreseen, based upon the "conduct and relations of the parties,"
that the Plaintiffs would rely on Suffolk either to continue
providing the promised in-person experience or to cease
providing the promised in-person experience but refund the fees
and tuition paid for that experience.  See Squeri, 954 F.3d at
71 (quotations omitted); Walker, 840 F.3d at 61–62; see also
Verlanga v. Univ. of S.F., No. CGC-20-584829, 2020 WL 7229855,
at *4 (Cal. Super. Ct. Nov. 12, 2020) (in COVID-19 tuition
refund dispute, stating that "[i]t was reasonable for Plaintiffs
to expect when they were billed for the Spring semester that
they would receive the services, including in-person instruction
and lodging in university residence halls, that were allegedly
promised to them").  "What becomes of that right or that
understanding in the face of a global pandemic is a separate
issue, not appropriately resolved" on a motion to dismiss.  See
Holmes, 2021 WL 1099323, at *3 (quotations omitted).

Accordingly, drawing all reasonable inferences in their
favor, the Plaintiffs state a plausible claim for breach of an
implied-in-fact contract for an in-person experience for the
entire spring 2020 semester.[3]  See Doe v. Bradley Univ., Case No.

---

[3] The Court recognizes that Durbeck's third count is wholly
premised, and the Fotis' first count is partially premised, on
the payment of fees.  Durbeck's Am. Compl. ¶¶ 144-157; Fotis'
Am. Compl. ¶¶ 62-76.  The Court further recognizes that in two
COVID-19 tuition refund disputes, another session of this Court
probed the nature of the fees at issue, allowing a motion to

20-1264, 2020 WL 7634159, at *2 (C.D. Ill. Dec. 22, 2020) (in COVID-19 tuition refund dispute, collecting cases in which courts denied defendant-schools' motions to dismiss breach of contract claims where plaintiffs alleged contracts "for in-person instruction based on university handbooks, catalogs, and brochures"); Salerno v. Fla. S. Coll., Case No. 20-cv-1494-30SPF, 2020 WL 5583522, at *5 (M.D. Fla. Sept. 16, 2020) (in COVID-19 tuition refund dispute, denying motion to dismiss because defendant-school's publications and materials "touted its many resources and facilities -- all of which were located on the campus thereby implying in-person participation").

---

dismiss as to claims based on fees used to "'support' certain facilities during terms for which those students are enrolled in classes," but denying the motion as to claims based on fees used "to gain admission to any on-campus facility or access to a given resource." See Bahrani, 2020 WL 7774292, at *3; Chong, 2020 WL 7338499, at *3-4. In a third COVID-19 tuition refund dispute, that same session denied a motion to dismiss as to all fee-based claims, finding "it significant that the descriptions in this case also refer to specific activities occurring at specific locations . . . ." In re Bos. Univ. COVID-19 Refund Litig., 2021 WL 66443, at *3.

    The Massachusetts Superior Court subsequently declined to conduct such a probing inquiry on a motion to dismiss, stating, "While I agree that the 'fee' claims are more muddled, I am not prepared at this time to dismiss claims for fees that 'support' programs, as distinct from fees that provide facility access." Holmes, 2021 WL 1099323, at *3 n.5. This Court likewise declines to dismiss the Plaintiffs' fee-based claims at this stage.

### 2. The Disclaimer Renders any Promise in Suffolk's Online Undergraduate Academic Catalog Illusory.

Suffolk argues that the following language, printed at the top of its online Undergraduate Academic Catalog, authorized it to close all on-campus facilities, suspend all in-person services and activities, move all classes to online platforms, and withhold refunds.  Def.'s Mem. Supp. Mot. Dismiss Durbeck 16-17; Def.'s Mem. Supp. Mot. Dismiss Fotis 17-18.

> This catalog is not an agreement or contract between the student and Suffolk University or any other party or parties and should not be regarded as such.  The offerings and requirements contained herein are those in effect at the time of publication.  The University reserves the right to change, discontinue, or add academic requirements, courses or programs of study at any time.  Such changes may be made without notice, although every effort will be made to provide timely notice to students.

Def.'s Mem. Supp. Mot. Dismiss Durbeck, Ex. A, Undergraduate Academic Catalog ("Disclaimer"), ECF No. 29-1; Def.'s Mem. Supp. Mot. Dismiss Fotis, Ex. 1, Undergraduate Academic Catalog, ECF No. 17-1.[4]

This Court disagrees.  Here, the Plaintiffs plead an implied-in-fact contract for far more than just the "academic requirements, courses or programs of study" contemplated in the

---

[4] The Plaintiffs do not lodge a Rule 12(d) objection to the Disclaimer, which is, in any event, embodied in a "document[] sufficiently referred to in the complaint[s]."  See Squeri, 954 F.3d at 65 (quotations omitted).  Durbeck's Am. Compl. ¶¶ 23, 72, 106 (referring to Suffolk's "academic catalogs"); Fotis' Am. Compl. ¶¶ 25-27, 29, 65 (same).

Disclaimer, including corporeal interactions with faculty, peers, academic and athletic facilities, affinity and extracurricular groups, and hands-on experiential opportunities. Durbeck's Am. Compl. ¶¶ 28, 71; Fotis' Am. Compl. ¶¶ 12, 64. See Ford v. Rensselaer Polytechnic Inst., 20-CV-470, 2020 WL 7389155, at *6 (N.D.N.Y. Dec. 16, 2020) (in COVID-19 tuition refund dispute, stating that "what a student expects to receive in exchange for tuition money covers much more territory than simply the right to take classes"). Because "[t]hese allegations clearly extend beyond coursework to the entirety of the educational experience. . . . [T]he scope of the so-called disclaimer -- if disclaimer it is -- is not broad enough to extinguish Plaintiffs' claims." See Bergeron, 2020 WL 7486682, at *7; see also Hiatt v. Brigham Young Univ., Case No. 20-CV-00100-TS, 2021 WL 66298, at *3 (D. Utah Jan. 7, 2021) (in COVID-19 tuition refund dispute, declining to decide on motion to dismiss whether disclaimer in defendant-school's catalog "bars Plaintiff's claims as a matter of law").

The Disclaimer does, however, render any promise in Suffolk's online Undergraduate Academic Catalog illusory. In Jackson v. Action for Boston Community Development, Inc., the Massachusetts Supreme Judicial Court held that a reservation of rights which authorizes a unilateral modification of a document's terms tends to render any "offer" in the document

illusory.  See 403 Mass. 8, 14-15 (1988).  In Pacella v. Tufts
University School of Dental Medicine, this Court "adhere[d] to
the teachings of Jackson," ruling that a college was not bound
by the terms of a student handbook in part because the college
reserved the unilateral right to modify those terms without
notice.  66 F. Supp. 2d 234, 241 (D. Mass. 1999).  Applying
similar reasoning, the United States District Court for the
Southern District of New York held that a disclaimer in an
academic catalog "may excuse the university from a specific
promise that would otherwise be a contractual obligation."  Deen
v. New Sch. Univ., No. 05 Civ. 7174 KMW, 2007 WL 1032295, at *2
(S.D.N.Y. Mar. 27, 2007) (applying New York law); Keles v. N.Y.
Univ., No. 91 CIV. 7457 (SWK), 1994 WL 119525, at *6 (S.D.N.Y.
Apr. 6, 1994) (same), aff'd, 54 F.3d 766 (2d Cir. 1995).

     This Court rules that under Pacella and Jackson, the
Disclaimer renders any promise in Suffolk's online Undergraduate
Academic Catalog illusory.  See Pacella, 66 F. Supp. 2d at 241;
Jackson, 403 Mass. at 14-15.  This ruling does not, as Suffolk
suggests, Def.'s Mem. Supp. Mot. Dismiss Durbeck 16-17; Def.'s
Mem. Supp. Mot. Dismiss Fotis 17-18, doom the Plaintiffs'
claims.  Pacella and Jackson counsel the Court to disregard only
the promises allegedly implied in the document where the
Disclaimer lies: Suffolk's online Undergraduate Academic
Catalog.  See Pacella, 66 F. Supp. 2d at 241; Jackson, 403 Mass.

at 14-15.  These precedents do not counsel the Court to ignore
other alleged bases for an implied-in-fact contract.  See
Pacella, 66 F. Supp. 2d at 241; Jackson, 403 Mass. at 14-15; see
also Deen, 2007 WL 1032295, at *3-4 (parsing terms of disclaimer
in academic catalog and ruling that it applied to some but not
all of defendant-school's implied promises); Gally v. Columbia
Univ., 22 F. Supp. 2d 199, 206 n.7 (S.D.N.Y. 1998) (stating that
although defendant-school "could disclaim the existence of a
specific promise through the use of such a disclaimer, it could
not unilaterally disclaim all contractual relations between the
parties" (citation omitted)).  These other bases, as limned
above, are plausibly pled.  See supra Section II.C.1.

Suffolk analogizes its Disclaimer to the reservation of
rights in Lindner v. Occidental College.  Def.'s Reply Supp.
Mot. Dismiss Durbeck 3, 12-13 (citing 2020 WL 7350212 (applying
California law)); Def.'s Reply Supp. Mot. Dismiss Fotis 1, 8-9
(same).  This analogy is inapposite.  The reservation of rights
in Lindner expressly authorized the defendant-school "to change
fees, modify its services, or change its program should economic
conditions or national emergency make it necessary to do so" and
specified that "fees, tuition, programs, courses, course
content, instructors, and regulations are subject to change
without notice."  2020 WL 7350212, at *2 (brackets omitted).
Suffolk's analogy overlooks the precise language authorizing the

modification of services and costs of attendance as well as the
reservation's limited applicability to forces majeures, neither
of which is present in Suffolk's Disclaimer.  See In re Columbia
Tuition Refund Action, No. 20-CV-3208 (JMF), 2021 WL 790638, at
*5 (S.D.N.Y. Feb. 26, 2021) (in COVID-19 tuition refund dispute,
stating that disclaimer in defendant-school's university catalog
"is significantly narrower in scope" than disclaimer in Lindner
and that it "arguably does not cover the change in instructional
format from in-person to online"); McCarthy, 2021 WL 268242, at
*3 n.2 (in COVID-19 tuition refund dispute, distinguishing
"express contract right" in Lindner from language in defendant-
school's bulletin authorizing it "to make changes to degree
program requirements, academic and administrative policies and
regulations, financial charges, and course offerings"); see also
Gibson v. Lynn Univ., Inc., CASE NO. 20-CIV-81173-RAR, 2020 WL
7024463, at *3 (S.D. Fla. Nov. 29, 2020) (in COVID-19 tuition
refund dispute, stating that analysis of force majeure clause in
defendant-school's policies "is more appropriate at the summary
judgment stage" than at the pleading stage).

The reservation of rights in the other decision on which
Suffolk primarily relies, a contract dispute under Puerto Rico
law, contained similarly precise language authorizing the
modification of costs of attendance and "any other regulations
affecting students . . . ."  See Cuesnongle v. Ramos, 713 F.2d

881, 885 (1st Cir. 1983) ("The University reserves the right to
revise or change rules, charges, fees, schedules, courses,
requirements for degrees and any other regulations affecting
students whenever considered necessary or desirable.").

The Disclaimer's scope and effect thus delineated,
Suffolk's motions to dismiss the Plaintiffs' breach of contract
claims are DENIED.

### D.   Unjust Enrichment

Suffolk argues that the Plaintiffs fail to state a claim
for unjust enrichment as matter of law because the Plaintiffs
have an adequate remedy at law (i.e., under their breach of
contract theory).  Def.'s Mem. Supp. Mot. Dismiss Durbeck 17-18;
Def.'s Mem. Supp. Mot. Dismiss Fotis 18-19.  Suffolk further
contends that the Plaintiffs fail to plead facts sufficient to
state a claim for unjust enrichment.  Def.'s Mem. Supp. Mot.
Dismiss Durbeck 18-20; Def.'s Mem. Supp. Mot. Dismiss Fotis 19-
20.  The Plaintiffs respond that they do not have an adequate
remedy at law (i.e., that their unjust enrichment claims are
pled in the alternative to their breach of contract claims),
Durbeck's Opp'n 18-19; Fotis' Opp'n 18-19, and that they plead
facts sufficient to state a claim for unjust enrichment,
Durbeck's Opp'n 19-20; Fotis' Opp'n 20.

### 1. The Plaintiffs' Unjust Enrichment Claims Are Not Barred as Matter of Law.

A plaintiff "with an adequate remedy at law cannot claim unjust enrichment." Tomasella v. Nestlé USA, Inc., 962 F.3d 60, 82 (1st Cir. 2020) (quotations omitted) (applying Massachusetts law). Specifically, "it is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." Id. at 82-83 (brackets and quotations omitted). Nevertheless, because "unjust enrichment serves as an equitable stopgap for occasional inadequacies in contractual remedies at law," Wipro Ltd. v. Analog Devices, Inc., CIVIL ACTION NO. 19-12063-JGD, 2020 WL 7016868, at *7 (D. Mass. May 7, 2020) (Dein, M.J.) (quotations omitted), "it is accepted practice to pursue both theories at the pleading stage," Lass v. Bank of Am., N.A., 695 F.3d 129, 140 (1st Cir. 2012) (applying Massachusetts law); see also Vieira v. First Am. Title Ins. Co., 668 F. Supp. 2d 282, 295 (D. Mass. 2009) (Woodlock, J.) (stating that Federal Rule of Civil Procedure 8(d) "permits Plaintiffs to plead alternative and even inconsistent legal theories, such as breach of contract and unjust enrichment, even if Plaintiffs only can recover under one of these theories"); Little v. Grand Canyon Univ., No. CV-20-00795-PHX-SMB, 2021 WL 308940, at *4 (D. Ariz. Jan. 29, 2021) (in COVID-19 tuition refund dispute, recognizing that under Federal Rule of Civil Procedure 8(d), "a

party may plead an unjust enrichment claim in the alternative even if they are alleging the existence of a contract governing the dispute"); cf. Kishinevsky v. Bd. of Trs. of Metro. State Univ. of Denver, No. 20CV31452, 2020 WL 7087313, at *4 (Colo. Dist. Ct. Nov. 23, 2020) (in COVID-19 tuition refund dispute, observing that a contrary practice would force the plaintiff "to argue against himself at the pleading stage").

Here, although the Plaintiffs plead claims for both breach of contract and unjust enrichment, Durbeck's Am. Compl. ¶¶ 69-171; Fotis' Am. Compl. ¶¶ 62-84, they plead these permissibly in the alternative, Durbeck's Am. Compl. ¶¶ 131, 160; Fotis' Am. Compl. ¶ 78, and Suffolk denies the existence of a contract with the Plaintiffs, Def.'s Mem. Supp. Mot. Dismiss Durbeck 10-17; Def.'s Mem. Supp. Mot. Dismiss Fotis 11-18.  The Plaintiffs' unjust enrichment claims therefore are not barred as matter of law.  See Lass, 695 F.3d at 140.

### 2. The Plaintiffs State a Claim for Unjust Enrichment.

To state a claim for unjust enrichment under Massachusetts law, a plaintiff must allege "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit under the circumstances would be inequitable without payment for its value."  Tomasella, 962 F.3d at 82 (quotations omitted).  Unjustness is "a quality that turns

on the reasonable expectations of the parties." <u>Metropolitan
Life Ins. Co.</u> v. <u>Cotter</u>, 464 Mass. 623, 644 (2013) (quotations
omitted).

Here, the Plaintiffs state a claim for unjust enrichment.
First, the Plaintiffs allege that they conferred fees and
tuition on Suffolk.  Durbeck's Am. Compl. ¶¶ 12, 18, 32-41, 120;
Fotis' Am. Compl. ¶¶ 10, 19, 46-50, 68.  Second, the Plaintiffs
plead that in exchange for the fees and tuition, Suffolk
delivered an in-person experience for the first half of the
spring 2020 semester but a virtual experience for the second
half.  Durbeck's Am. Compl. ¶¶ 40, 46-49; Fotis' Am. Compl.
¶¶ 34-37.  Finally, the Plaintiffs allege that based on their
payment of fees and tuition, it was reasonable to expect an in-
person experience for the entire spring 2020 semester, yet
Suffolk failed to deliver that experience.  Durbeck's Am. Compl.
¶¶ 71, 150; Fotis' Am. Compl. ¶¶ 24, 46, 64, 70.

Although Suffolk contends that it was not unjust to retain
the Plaintiffs' fees and tuition because Suffolk continued to
provide educational instruction toward a degree, Def.'s Mem.
Supp. Mot. Dismiss Durbeck 18-20; Def.'s Mem. Supp. Mot. Dismiss
Fotis 19-20, the Court must draw all reasonable inferences in
the Plaintiffs' favor, and in so doing it cannot be said as
matter of law that Suffolk's actions were not unjust under the
circumstances, <u>see</u> <u>Rosado</u> v. <u>Barry Univ. Inc.</u>, CASE NO. 20-CV-

21813-JEM, 2020 WL 6438684, at *6 (S.D. Fla. Oct. 30, 2020) (in COVID-19 tuition refund dispute, recognizing that although defendant-school "disputes that the retention of the payments was 'unjust,' a motion to dismiss tests the sufficiency of the pleading, not the merits of the case"). "[E]ven if [the Plaintiffs] received a substantial benefit from [their] payments of tuition and fees, it may still be inequitable for [Suffolk] to retain their full value." See Rhodes, 2021 WL 140708, at *7. Suffolk's motions to dismiss the Plaintiffs' unjust enrichment claims are DENIED.[5]

## III. CONCLUSION

For the foregoing reasons, Suffolk's motions to dismiss, ECF No. 25 (Civil Action No. 20-10985-WGY) and ECF No. 16 (Civil Action No. 20-11581-WGY), are DENIED.


**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
DISTRICT JUDGE

---

[5] The Court recognizes that Durbeck's fourth count is wholly premised, and the Fotis' second count is partially premised, on the payment of fees. Durbeck's Am. Compl. ¶¶ 158-171; Fotis' Am. Compl. ¶¶ 77-84. As explained above, this does not change the Court's conclusion. See supra note 3.